**In re ROMEC PUMP CO.**
No. 49864.

District Court, N. D. Ohio, E. D.
Nov. 8, 1939.

Squire, Sanders & Dempsey and William H. Hill, all of Cleveland, Ohio, for debtor.

O'Neill & Laughlin, H. R. Teschner, and Hugh Wells, all of Cleveland, Ohio, for objectors.

Paul Clarke, of Cleveland, Ohio, for King Fauver, receiver.

JONES, District Judge.

The referee has entered an order confirming the debtor's plan of arrangement, to which certain creditors have objected and have filed a petition for review. Some 15 charges of error in the findings and rulings of the referee are asserted. Together with his certificate on review, the referee has filed a statement dealing with the objections and setting forth his findings and conclusions with respect to each of the objections.

Careful consideration of the objections leads me to conclude that those directed to irregularity in the proceedings and a non-compliance with certain of the provisions of the Act are not of such substantial character as to justify reversal on review. The whole matter, as I see it, depends upon the merit of those objections to confirmation which go to the question of whether the arrangement is fair, equitable and feasible, and is for the best interests of the creditors.

That something more than the required majority of the creditors, holding a very substantial amount of the total claims, have accepted the plan of arrangement certainly gives strong evidential weight to favorable consideration, although it must be recognized that it is not the controlling consideration. However, I think that in the absence of a substantial showing in opposition to the arrangement, the Court would be justified in confirming upon the prima facie case made by the debtor's proposal and its acceptance by the requisite number and amount of claims. To give creditors a choice between liquidation and life in respect of their debtor is the underlying purpose of the Act. To resuscitate, if there is reasonable prospect, by the adoption of a workable plan, is the objective.

One of the principal bases of the objections to the proposed extension is the Bishop-Babcock offer to acquire the debtor's assets and to make provision for immediate payment of approximately 25% cash to creditors of the class of those objecting, further payment on such claims to be made out of one-half of the profits earned by the "Rotary Pump Department" of Bishop-Babcock Company. While the offer is not an alternative plan and is not of itself a ground for rejection of the arrangement, yet it does present a comparative measure by which to test the fairness of the plan from the standpoint of probable realization for creditors. Ordinarily, a smaller sum presently payable or obtainable has greater value than a larger sum payable in six years, and carries less of the risks of deferment; but there are inherent weaknesses in the Bishop-Babcock offer as a potential alternative It contemplates liquidation of the debtor's estate and of its independent corporate character. If it or something like it could be worked out, the bankruptcy creditors would transmute their claims to future recovery into conditional obligations of a department of the company in which they would have no voice and no definite commitment to future payment. Present payment of 25% cash is a favorable element, but the provision for future payments conditioned and contingent upon earnings and profits of the pump department, coupled with the surrender of enforcible claims, leaves the offer as a doubtful prospect for greater realization in the end.

■ Much has been urged pro and con in respect of the burden of proof in such cases. I do not stop to analyze or discourse on the relative theories advanced, in the face of a statute which expressly puts the burden upon the bankruptcy court to determine from the facts before it, both in favor of and in opposition to the plan, whether there is presented a workable and fair arrangement under which the creditors have a reasonable prospect of getting more on their claims than they probably would if the debtor should be liquidated. The ultimate question for the Court, then, is whether there is reasonable prospect of profitable operation and of fulfilling the provisions of the plan respecting payment to creditors. Certainly this is a difficult matter, since no one can foresee consequences with any degree of certainty. But the law definitely commits the determination of this question to the bankruptcy court, regardless of where the burden of proof may lie.

While it is true that the referee does hold that those who object to confirmation of a plan as against the best interests of the creditors have the burden of proving by a preponderance of the evidence the allegations upon which their objections are based, yet I do not find that his findings and conclusions are wholly based upon the failure of the objectors to carry that burden. In his statement of questions presented and findings of fact and conclusions of law, the several objections are analyzed and his reasons stated as to why they are not well taken. This is particularly true in respect of those objections which seem to me to present the greatest merit.

■ Thirty out of fifty-one creditors of the class affected, holding $92,356.83 of an aggregate amount of $101,903.50 of claims allowed, have accepted and thus have signified their belief that the arrangement offers a better chance for realization of their claims than does liquidation. The referee, after extensive hearings, has ordered confirmation and has certified his findings and conclusions in respect of each of the objections urged against his order. What has transpired and been done up to this point should not be set aside except upon a clear showing of erroneous or illegal action. From a full consideration of the objections, I am unable to say that such showing has been made.

■ However, there is one matter which should receive further consideration or clarification. If the provision respecting the designation of directors only is to survive until the debtor is released from the jurisdiction of the Court, there really is no purpose in providing for creditor-representation. The referee construes this provision as relating only to the first board of directors. It seems to me that the debenture holders should have representation as long as they hold or retain their debentures, and until they are called for payment. Something more definite and constant in the way of debenture representation is found essential as a protection to creditors. This will permit them to know and see at close range the operation and management of the revived debtor, free from the embarrassment of inquiry, and to learn authentically from time to time how the business fares and what are the prospects of fulfillment.

Such continuing representation, beyond the period of jurisdiction of the Court over the debtor, effectively will give to the present debenture holders the opportunity of insisting promptly upon fulfillment according to the provisions of the arrangement, or of acting with equal dispatch to compel liquidation before their interests are seriously impaired. Six years is a long extension, and creditors whose payment may be postponed for such period ought to have assurance of longer representation than the first year.

Except as thus modified, the order of the referee will be confirmed and the petition to review dismissed, with exceptions to the parties adversely affected.